[727 NYS2d 431]

In the Matter of DAVID G. LUBELL (Admitted as DAVID LUBELL), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 26, 2001

### APPEARANCES OF COUNSEL

*Naomi F. Goldstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Joseph R. DeMatteo* of counsel (*DeMatteo Bernfeld, L. L. P.,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent David G. Lubell was admitted to the practice of

law in the State of New York by the First Judicial Department on December 12, 1958, as David Lubell. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

On or about August 28, 2000, the Departmental Disciplinary Committee (Committee) served respondent with a notice and statement of four charges alleging that he mishandled client funds in the early 1980's in violation of Code of Professional Responsibility DR 9-102 (a) (now [b]), DR 9-102 (b) (3) (now [c] [3]) and DR 9-102 (b) (4) (now [c] [4]) (22 NYCRR 1200.46). By a pre-hearing stipulation dated October 18, 2000, respondent stipulated to all of the allegations.

A Referee's hearing was held on October 26, 2000 and, based upon the stipulation, all of the charges were sustained. Respondent admitted that in 1980 or 1981, Shahbaz Zarintash (Zarintash) retained respondent to form off-shore corporations for a business venture. In 1983, Zarintash was indicted on Federal drug charges and bail was set at $150,000. Although respondent did not represent Zarintash in the criminal matter, respondent agreed to hold $150,000 of Zarintash's money as surety for a mutual friend who had put up her loft apartment to secure the bail bond. Thereafter, three equal installments of $50,000 each were delivered to respondent. Respondent did not deposit any of the money into a bank, nor did he maintain any records of the funds.

After Zarintash was convicted and the bail exonerated, Zarintash asked his sister Diane, who had his power-of-attorney, to ask respondent to return the $150,000. Respondent returned $50,000, leaving a balance of $100,000. Although he had no records as documentation, respondent claimed he also returned another $50,000 to a designee of Zarintash. With regard to the $50,000 balance, in 1983, shortly after the money was entrusted to him, respondent, an entertainment lawyer, invested it in a Canadian film project without Zarintash's authorization or knowledge. Eventually, between 1991 and 1993, respondent remitted $50,000 to Zarintash in monthly payments of approximately $2,000-$2,500. According to respondent, on March 10, 1999, Zarintash approached him, claiming that $50,000 had not been repaid and he threatened to file a disciplinary complaint. In or around December 1999, respondent and Zarintash entered into a settlement agreement where respondent paid Zarintash $36,000 and obtained a general release.

Based upon this admitted misconduct, the Referee found that respondent violated: DR 9-102 (a) (now [b]) by failing to deposit Zarintash's money in an escrow account and by, thereafter, investing $50,000 of it without authorization; DR 9-102 (b) (3) (now [c] [3]) by failing to maintain records of the money entrusted to him; and DR 9-102 (b) (4) (now [c] [4]) by failing to promptly return all of the money when he was asked to do so shortly after bail was exonerated.

In mitigation, the Referee considered the testimony of respondent's seven witnesses—attorneys and clients—each of whom attested to their continuing confidence in respondent despite his misconduct. The Referee also took into consideration respondent's extensive *pro bono* work, the aberrational nature of the misconduct, the lack of venality, and respondent's cooperation, remorse and "deep" embarrassment. Respondent, who is 71 years old and has been practicing law for over 40 years, testified regarding his social activism and *pro bono* work in civil rights and anti-war movements, expressed his remorse, and noted that he does not handle escrow funds at the firm where he is a partner.

In aggravation, the Referee took note of a 1989 admonition respondent had received for failing to supervise his staff and for neglect, but declined to give it any weight.

After reviewing the applicable case law (*Matter of Hammer*, 253 AD2d 226; *Matter of Greenberg*, 165 AD2d 424), the Referee concurred with the Committee's position and recommended public censure, finding that respondent posed no threat to the public, he made full restitution, he did not gain financially from the misconduct and, given respondent's age, a more severe sanction would effectively bar him from resuming the practice of law (*Matter of Einhorn*, 88 AD2d 95, 98).

By a report dated December 21, 2000, the Referee concurred with the Committee's recommendation that respondent be publicly censured. A Hearing Panel convened and issued a report and recommendation dated April 16, 2001, recommending affirming the Referee's report in its entirety.

The Committee now seeks an order confirming the Hearing Panel's findings of fact and conclusions of law, and imposing public censure as a sanction. Respondent's counsel has submitted reply papers in support of the Committee's petition recommending a public censure. We confirm the Hearing Panel's findings and conclusions in their entirety. With regard to sanction, it is recommended that the Referee and Hearing Panel's recommendations be confirmed as well. This Court has

indicated that censure is a proper sanction with respect to an attorney who mishandles client funds as a result of misinformation (*see, Hammer, supra*) or negligence (*see, Greenberg, supra*) even if the attorney has been the subject of a prior disciplinary proceeding.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings of fact and conclusions of law is granted, and respondent is publicly censured.

NARDELLI, J. P., WILLIAMS, TOM, MAZZARELLI and MARLOW, JJ., concur.

Petition granted and respondent publicly censured.