[749 NYS2d 23]

In the Matter of EDWARD LAND (Admitted as EDWARD WALTER LAND), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 29, 2002

### APPEARANCES OF COUNSEL

*James T. Shed* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Edward Land*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Edward Land was admitted to the practice of

law in the State of New York by the First Judicial Department on August 12, 1991 as Edward Walter Land. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On or about October 16, 2001, respondent was served with a notice and statement of charges alleging that he violated Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7), and DR 9-102 (a), (b), (d) and (e) (22 NYCRR 1200.3, 1200.46). The charges arose from two separate incidents, one involving notarization violations and the other a series of escrow account violations. In his answer, respondent admitted the factual allegations contained in the charges but denied that his conduct violated the disciplinary rules. In a prehearing stipulation, respondent conceded he committed the violations specified in the statement of charges.

In a report dated March 19, 2002, the Referee sustained all 10 charges against respondent and recommended public censure. In a report dated May 8, 2002, a Hearing Panel concurred with the Referee's report in its entirety.

Since all charges were admitted by respondent, the only issue for decision by the Referee was the appropriate sanction. The undisputed facts as summarized by the Hearing Panel are set forth below.

In December 1998, respondent represented the plaintiffs in connection with a civil action in Kings County Supreme Court. In opposition to the defendants' summary judgment motion, respondent submitted 10 individual affidavits. Wishing to spare the affiants the inconvenience of traveling to his downtown office to execute their sworn statements, respondent reviewed the contents of nine of the affidavits by telephone, stating that it was acceptable for him to sign for the affiants with their permission. Respondent thereupon signed the names of nine affiants and notarized their signatures as if the affidavits had actually been signed and sworn to before him. The tenth affidavit was signed by the affiant and faxed to respondent, who then notarized the affidavit without the affiant's presence. No personal gain or venality is ascribed to these notary violations. The Second Department imposed a sanction of $10,000 for respondent's misconduct in that action.

The escrow violations relate to respondent's IOLA account, which he opened in 1998. As a result of miscellaneous bank charges and a returned $400 check drawn on the account and payable to a client as litigation settlement proceeds, respondent's escrow account fell below the amount being held for

clients on eight different days during the months of January and February 2000. Respondent repaid the $400 settlement amount to his client. In addition, in June 2000, respondent withdrew funds from the account through a check made out to "cash." Although a bank employee mistakenly wrote the check to "cash" instead of making it payable to respondent, the responsibility was with respondent. It is also undisputed that respondent used his IOLA account to commingle client, business and personal funds inasmuch as during a six-month period ending June 2000, respondent deposited all his fees and paid all his personal and business expenses from the IOLA account. Respondent also failed to maintain full bookkeeping records for his escrow account. As such, respondent was found to have violated DR 1-102 (a) (4), (5), (7) and DR 9-102 (a) and (b), (b) (1) and (d) (1), (2) and (9).

Respondent sets forth a number of mitigating factors, including the extensive amount of pro bono work he has undertaken through the years, his representation of indigent clients who would otherwise have lacked adequate legal representation, his inexperience in running his own practice and unfamiliarity with the intricacies of the everyday operation of a law firm, his full disclosure and cooperation with the Committee's investigation, his remorse, and his lack of a prior disciplinary history. Several witnesses, most of whom were clients, testified to respondent's honesty and integrity, noting his willingness to take on pro bono representations and to go out of his way to assist clients for little or no compensation. Respondent testified that he charges low income clients legal fees of $25 or $50 an hour. One client, whose bounced check resulted in this disciplinary investigation, testified that when the check was returned for insufficient funds, respondent immediately rectified the situation by issuing another check and waiving his $100 fee. The Referee also credited respondent's testimony that he was "overwhelmed" as a result of firing his nanny after she used drugs in the presence of his son and then assuming the care of his child in the late afternoon, which meant working late into the night at his law practice. In addition, he testified to having suffered from depression at the time of the violations, a condition that has since been alleviated by therapy.

In reviewing comparable disciplinary cases, the Referee took into consideration that the violations respondent committed were without venal intent, that the harm caused by his actions was minimal, and that all parties involved absolved respondent of his wrongdoing. Where, as here, there was a nonvenal

notary violation, this Court has frequently imposed public censure (*see Matter of Vignola*, 218 AD2d 310).

Although the Committee initially urged a period of suspension of not more than one year, the Referee found that five First Department cases imposing public censure for escrow violations such as commingling and nonvenal conversion, bore a strong resemblance to respondent's case (*see e.g. Matter of Lubell*, 285 AD2d 267; *Matter of Hartman*, 259 AD2d 131). The Hearing Panel concurred in the Referee's report and recommendation of public censure.

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 603.4 (d), confirming the findings of fact, conclusions of law and recommended sanction of public censure. Respondent has submitted an answer and a supplemental answer in support of the Committee's petition, in which he reiterates his genuine remorse and accepts full responsibility for his misconduct. Respondent notes his rehabilitation and points to a copy of a ledger he now uses in connection with his escrow account, which he has supplied to the Committee.

In *Matter of Meltzer* (293 AD2d 202), an attorney was found to be responsible for the neglect of three legal matters by a nonlawyer under his supervision, aiding a nonlawyer in the unauthorized practice of law, sharing legal fees and forming a corporation with a nonlawyer, and neglecting a legal matter. This Court imposed public censure, specifically noting the respondent's cooperation, remorse, rehabilitation of his wayward practices, lack of a disciplinary record, performance of pro bono work for 10 years, and the breakup of his marriage and law firm. Respondent at bar is similarly deserving of the lesser sanction of public censure in light of the nonvenal nature of his misconduct, as well as substantial mitigating factors, including his commendable pro bono work and assumption of reduced fee cases for low income clients.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings and conclusions, based upon the Referee's report, should be granted and respondent publicly censured.

NARDELLI, J.P., WALLACH, RUBIN, MARLOW and GONZALEZ, JJ., concur.

Respondent publicly censured, as indicated.