[910 NYS2d 426]

In the Matter of CLEMENT A. FRANCIS, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 21, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Jerome Karp,* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Clement A. Francis was admitted to the practice of law in the State of New York by the Second Judicial Department on September 20, 2000. At all times relevant herein, respondent registered with the Office of Court Administration as having his business address within the First Judicial Department.

The Departmental Disciplinary Committee opened an investigation after receiving notification from the Lawyers' Fund for Client Protection of a dishonored $30,000 check drawn by respondent. The Committee's audit revealed that respondent failed to keep a ledger for his IOLA account and instead tried to balance the account by keeping a "cushion" of personal funds in it. This system resulted in shortfalls, culminating with the dishonored check. Subsequently, respondent deposited personal funds into the IOLA account and the check was paid.

On November 14, 2008, the Committee filed seven charges alleging respondent used client funds for personal purposes without permission in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), commingled escrow and personal funds in violation of DR 9-102 (a), disbursed personal funds from his IOLA account in violation of DR 9-102 (b) (1), failed to maintain a ledger or similar record of deposits and disbursements in violation of DR 9-102 (d) (1), (2) and (9), and engaged in conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). In a prehearing stipulation, respondent admitted all of the factual allegations and charges.

A Referee held a liability hearing on January 16 and March 4, 2009, and a sanction hearing on April 21, 2009. At the hearing, respondent appeared by counsel, testified on his own behalf and introduced into evidence his psychologist's report and four character letters written by attorneys who described him as kind, generous, honest, honorable and hardworking. The Committee introduced into evidence a psychiatric report and a letter of admonition issued in connection with respondent's failure to enter into a written retainer agreement. In a report dated September 8, 2009, the Referee sustained the charges and recommended a public censure. A Hearing Panel heard oral argument and, in a report dated December 31, 2009, confirmed the Referee's findings and recommendation as to sanction.

Now, by petition, the Committee seeks an order, pursuant to 22 NYCRR 603.4 (d) and 605.15, confirming the Hearing Panel's determination and imposing censure.

Respondent grew up in Grenada in a close-knit family where sharing with the less fortunate was the norm. Respondent's law practice consisted primarily of immigration and real estate, representing mostly poor and unemployed clients. Respondent wanted to help his clients, and he sometimes made payments on their behalf, including application fees and mortgage payments.

In 2000, respondent opened an escrow account without realizing that he needed to keep a ledger. In June 2004, an individual who rented office space to respondent asked him to deposit a $144,050.80 check into his IOLA account and disburse it as directed.* On June 30, 2004, respondent deposited the check into his IOLA account and then disbursed various checks at that individual's request.

On or about December 21, 2005, respondent's final check for $30,000 was dishonored. On December 23, 2005 respondent deposited personal funds into the account to cover the check. This was the only check to be dishonored. The individual did not lose any money as a result and submitted a character letter attesting to respondent's honesty.

The Committee's audit of respondent's IOLA account revealed that between June 22, 2004 and November 10, 2005, there were shortfalls in the account totaling $15,371.68 caused by respondent making payments on behalf of his clients and returning fees to clients who needed the money. The audit also revealed that respondent's own money was deposited into the account, his clients lost no money and respondent never converted money for personal use.

The sincerity of respondent's remorse over the mishandling of his IOLA account was supported by the reports of his expert, Dr. Jacob Mermelstein, and the Committee's expert, Dr. Amy Hoffman. Dr. Mermelstein saw respondent for 15 sessions, and in his January 8, 2009 report, concluded that respondent

> "in his endeavor to help others . . . failed to see the possibility of being used. Thus he was blind to the harm all of this would cause him. This is due to 'culture-shock'. Namely, coming from a tradition of

---

* The Committee found no evidence that the funds deposited into respondent's escrow account were for an improper purpose.

trust, and encountering modern day 'bustle'. A good part of our sessions was devoted to learning . . . [the] correct handling of escrow funds, and separation between strict adherence to the rules of his profession and his personal need to help others."

Dr. Hoffman agreed "with Dr. Mermelstein's formulation that [respondent's] failure to keep good records had everything to do with his personality structure" and that he posed no threat to society by his practice of law. Dr. Hoffman opined that respondent was likely to continue helping those less fortunate and believed that he had gained insight into his behavior and would make good use of the advice and counsel of others.

The Referee found that respondent's violations of the IOLA rules

"were largely due . . . to 'lack of sophistication and lack of know-how' or as stated by Dr. Mermelstein 'due to culture-shock coming . . . from a tradition of honesty' . . . and, as evident from his testimony, to his intense desire to use his legal skills to help his poor immigrant clients achieve a better life, even to the use of his own money and to his own detriment."

However, the Referee found that respondent's commendable intentions did not excuse his "failure to familiarize himself with the Rules . . . and/or seek the guidance of more experienced and knowledgeable practitioners" by which actions he "showed a serious lack of judgment."

The Referee found that the cases relied upon by the Committee in seeking an 18-month suspension involved more egregious conduct, such as the conversion of funds and failure to cooperate. In contrast, the cases relied upon by respondent, which involved the imposition of a public censure, were more similar to this matter where the violations were a result of poor judgment rather than dishonesty, and respondent expressed remorse and fully cooperated with the Committee.

In recommending public censure, the Referee noted that

"[n]ot only has Respondent demonstrated an awareness of the seriousness of his violations . . . and his remorse . . . but he also undertook . . . to correct the manner in which he maintains his accounts, under the guidance of his counsel . . . and he is

> currently in compliance with all the relevant rules. In that setting, any suspension would merely be a punitive exercise . . . since I am convinced that [respondent] now fully appreciates the critical importance of strictly adhering to the Rules."

A Hearing Panel confirmed the Referee's report in all respects and concurred in the sanction recommendation. The Panel noted that this Court has imposed a public censure for unintentional escrow violations caused by poor judgment where the respondent expressed remorse and cooperated with the Committee, even where there has been a prior admonition.

The Panel found that at least 7 of the 13 mitigating factors identified in the American Bar Association Standards for Imposing Lawyer Sanctions were present: (1) absence of dishonest or selfish motive; (2) personal or emotional problems; (3) timely good faith effort to make restitution or to rectify the consequences of misconduct; (4) full disclosure to disciplinary board or cooperative attitude toward proceedings; (5) inexperience in the practice of law; (6) character or reputation; and (7) remorse.

Now, the Committee seeks to confirm the Hearing Panel's determination and recommendation of censure.

This Court has indicated that an attorney who mishandles his escrow account as a result of negligence or mistake, including commingling personal funds with client funds, should be censured (*Matter of Land*, 299 AD2d 83 [2002] [public censure for nonintentional misappropriation and commingling, notary violation; extensive pro bono work, prompt restitution, genuine remorse, cooperation and depression]; *Matter of Lubell*, 285 AD2d 267 [2001] [public censure for mishandling of clients' funds and improper record keeping, notwithstanding prior admonition, where conduct aberrational and nonvenal]).

Based upon the admitted misconduct, the Hearing Panel's determination which concurred with the Referee's findings of fact and conclusions of law should be confirmed. With regard to sanction, in light of the unintentional nature of the misconduct, the lack of personal gain or harm to his clients, the substantial evidence in mitigation including learning from his attorney the proper way to maintain an escrow account, and the applicable precedent, a public censure is appropriate.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings and conclusions, based upon the

Referee's report, should be granted and respondent publicly censured.

MAZZARELLI, J.P., SWEENY, CATTERSON, RENWICK and MANZANET-DANIELS, JJ., concur.

Respondent publicly censured.