[959 NYS2d 162]

In the Matter of BRUCE G. PRITIKIN (Admitted as BRUCE GIL-BERT PRITIKIN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 5, 2013

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Richard M. Maltz,* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Bruce Gilbert Pritikin was admitted to the practice of law in the State of New York by the Second Judicial Department on January 27, 1967. At all times relevant to this proceeding, he maintained a principal place of business within the First Judicial Department.

On March 29, 2011, the Departmental Disciplinary Committee (Committee) served respondent with a notice and statement of charges containing eight charges, each one alleging professional misconduct stemming from respondent's misuse of his Interest on Lawyer Account (IOLA account).

Charges one and two of the Committee's statement of charges alleges that respondent violated Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. The Committee alleges that respondent violated this rule by depositing a client's personal and business funds into his IOLA account in order to help a client avoid the attachment of various outstanding tax liens and judgments. The Committee alleges that this rule was also violated when respondent converted the funds of another client of respondent's public accounting firm, by using that client's funds, without permission or authority, to satisfy another client's personal and business obligations.

Charge three alleges that respondent violated DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. The Committee alleges that respondent violated this rule by depositing a client's personal and business funds into his IOLA account in order to help the client avoid the attachment of various outstanding tax liens and judgments.

Charges four and five allege that respondent violated DR 9-102 (a) (22 NYCRR 1200.46 [a]), which prohibits an attorney

from misappropriating funds belonging to another. The Committee alleges that respondent violated this rule by allowing two Automatic Clearing House debits presented on the IOLA account to be dishonored for insufficient funds and by issuing a check to "cash," which resulted in the IOLA account becoming overdrawn.

Charge six alleges that respondent violated DR 9-102 (b) (1) (22 NYCRR 1200.46 [b] [1]), which requires that an attorney keep his business and personal accounts separate from an IOLA account. The Committee alleges that respondent violated this rule by depositing a client's personal and business funds into respondent's IOLA account, and using the account as a personal/business account for that client, thereby failing to segregate personal and business funds from attorney escrow funds.

Charge seven alleges that respondent violated DR 9-102 (e) (22 NYCRR 1200.46 [e]), which prohibits an attorney from writing checks from an IOLA account payable to cash. The Committee alleges that respondent violated this rule by issuing 38 such checks from his IOLA account.

Charge eight alleges that respondent violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), which prohibits an attorney from engaging in any other conduct that adversely reflects on his fitness as an attorney. The Committee alleges that respondent violated this rule insofar as he engaged in the misconduct listed in charges one through seven.

On June 8, 2011, at a liability hearing before a Referee, respondent's testimony, a prehearing stipulation, and the testimony of Paul Comeau (Comeau) established the following. Respondent has been admitted to practice law since 1967, he's been employed as an accountant since 1970, and obtained his CPA license in 1974. Since 1996, he has been employed at his current firm, where, at the time of the hearing he was a CPA and a partner. While he works in the areas of tax planning and consulting, he never acted as a lawyer while at this firm.

In 2006, respondent and his firm were retained by a client to provide services related to business management, tax consulting, and the preparation of tax returns. The services also included collecting this client's income and paying his bills. In May 2007, respondent learned that his client's bank account had been frozen by a tax lien and he sought respondent's help in opening another account to deposit checks and pay bills. Aware that his client also had a host of other questionable tax liabilities, respondent sought the advice and legal counsel of

Comeau, an experienced tax attorney. While Comeau denied that he ever counseled respondent to resolve this client's tax lien issue by opening an IOLA account, respondent testified that it was Comeau who suggested that this client could continue to conduct his business via an IOLA account. Thus, respondent opened an IOLA account into which he deposited this client's funds. While he was concerned that depositing these funds into his IOLA account assisted this client in avoiding tax liens, respondent nevertheless expected that this would ultimately aid this client in satisfying his tax obligations. Between May 2007 and October 2008, respondent repeatedly deposited this client's funds into the IOLA account, using the funds to pay this client's personal and business expenses.

On November 14, 2007, respondent allowed a partner at his firm to deposit $450,000 belonging to a second firm client into his IOLA account. The funds were intended to satisfy that client's tax obligations. Between November 14 and November 23, 2007, respondent, by authorizing his bookkeeper to make withdrawals from the IOLA account, allowed $107,585.98 belonging to this second client to be used to satisfy the first client's obligations. Respondent was unaware that the first client had insufficient funds in the account to cover his obligations and attributed the mistake to his bookkeeper's unfamiliarity with IOLA accounts.

At a sanction hearing before the same Referee, respondent expressed remorse for his actions and made it clear that he understood that an IOLA account could not be used as a business account. Respondent also testified about his charitable endeavors including his work as president of the New Jersey chapter of United Cerebral Palsy. The Referee also heard from New Jersey Superior Court Judge Paul Armstrong, who having known respondent for 35 years, testified that his behavior was aberrational, and that respondent had always adhered to high ethical and professional standards. Lastly, Jerry Carp, an attorney, testified on respondent's behalf, averring that he had always been forthright and possessed great integrity.

The Referee found, consistent with the allegations in the Committee's statement of charges, that respondent, through his misconduct, violated all of the sections of the Code of Professional Responsibility charged by the Committee. However, while sustaining all charges, the Referee rejected the sanction sought by the Committee, noting that suspension was unwarranted in light of all the extant mitigating factors established by respondent and instead recommended a public censure.

A Hearing Panel (Panel) heard arguments in support and in opposition to confirmation of the Referee's report and recommendation. The Panel, in its determination and recommendation noted that intent is required to sustain a violation of DR 1-102 (a) (4). As such, while the Panel concluded that respondent did in fact use his IOLA account to shield the first client's money from tax liens, it rejected the Referee's conclusion that respondent intentionally engaged in deception, and therefore, dismissed charge one. Finding that there was no evidence to support that respondent intentionally converted the second client's funds, the Panel also dismissed charge two. Pursuant to the motion of all parties, the Panel also dismissed charges four and five. Upon sustaining the Referee's findings with respect to charges three, six, seven and eight, the Panel, despite the existence of mitigating circumstances, recommended a two-year suspension.

The Committee now petitions this Court for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2), and Judiciary Law § 90 (2), confirming the Panel's determination thereby suspending respondent for two years. Respondent joins the Committee's petition to the extent it seeks to confirm the Panel's liability findings. However, respondent opposes the Committee's petition inasmuch as it seeks to confirm the Panel's recommended sanction, instead seeking the Referee's recommended sanction of public censure.

We conclude that the Panel's findings of fact and conclusions of law dismissing charge two and sustaining charges three, six, seven and eight are amply supported by the record and we therefore confirm that portion of the Panel's report (*Matter of Militello*, 76 AD3d 364, 365-366 [1st Dept 2010]; *Matter of Alejandro*, 65 AD3d 63, 65 [1st Dept 2009], *appeal dismissed* 13 NY3d 788 [2009], *lv denied* 13 NY3d 714 [2009]). However, insofar as the record demonstrates and respondent testified that he intentionally shielded the first client's funds from at least one tax lien, thereby engaging in dishonesty, fraud, deceit, or misrepresentation, respondent violated DR 1-102 (a) (4). We therefore hold that the Panel erred in dismissing charge one. Accordingly, we reinstate and sustain charge one, and disaffirm that portion of the Panel's determination.

While we agree with the Panel's recommended sanction of a two-year suspension, we do so for different reasons. The Panel's reliance on *Matter of Altomerianos* (160 AD2d 96 [1st Dept 1990] [attorney suspended for two years when through ignorance and

inexperience he violated DR 9-102 (a) by commingling escrow funds with his own and DR 1-102 (a) (5) by failing to deposit client escrow funds in IOLA account]), while not misplaced, is not controlling. Absent liability under charge one, respondent was only guilty of mishandling escrow funds due to negligence and inexperience. Notwithstanding the sanction imposed in *Matter of Altomerianos*, under more recent precedent, such circumstances merit no more than public censure (*Matter of Dyer*, 89 AD3d 182, 185-186 [1st Dept 2011] [attorney publicly censured when he negligently, inter alia, withdrew cash from IOLA account in violation of DR 9-102 (e) and used his IOLA account as a business account]; *Matter of Francis*, 78 AD3d 106, 110 [1st Dept 2010] [attorney publicly censured when he, inter alia, used his IOLA account as a business account in violation of DR 9-102 (a)]). Thus, given the Panel's finding on liability, the proper sanction should have been public censure.

Here, however, a two-year suspension is nevertheless warranted since upon reinstatement of charge one of the Committee's statement of facts, a two-year suspension is in accord with this Court's precedent in cases where an attorney uses an IOLA account to intentionally shield funds from tax liens (*Matter of Silva*, 28 AD3d 11, 13 [1st Dept 2006] [attorney suspended for two years after he, inter alia, violated DR 1-102 (a) (4) and (5) when, after his personal bank accounts had been levied upon by the IRS and another judgment creditor, he decided to shield his personal funds by the use of this escrow account for his business and personal funds]; *Matter of Goldstein*, 10 AD3d 174, 177 [1st Dept 2004] [attorney suspended for two years when he, inter alia, violated DR 1-102 (a) (4) by intentionally and deliberately opening two attorney escrow accounts, after his personal bank accounts had been levied upon by various taxing authorities, in order to shield his personal funds, exclusively utilizing these accounts for his business and personal funds for approximately two years]). While in this case the respondent was not attempting to shield his own assets from liens levied against his personal assets, his conduct, intentionally designed to avoid the attachment of a tax lien, is no less egregious and involves dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102 (a) (4) of the Code of Professional Responsibility. Suspension, rather than public censure is therefore warranted.

Accordingly, the Committee's petition seeking to confirm the Panel's findings of fact and conclusions of law as to charges

three, six, seven and eight should be granted, the Panel's dismissal of charge one should be disaffirmed, charge one should be sustained, and respondent suspended from the practice of law for two years.

GONZALEZ, P.J., SAXE, ABDUS-SALAAM, MANZANET-DANIELS and ROMÁN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of two years, effective 30 days from the date hereof and until further order of this Court.