[976 NYS2d 461]

In the Matter of BRUCE H. KAPLAN (Admitted as BRUCE HOW-
ARD KAPLAN), an Attorney, Respondent. DEPARTMENTAL DIS-
CIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT,
Petitioner.

First Department, December 10, 2013

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jun H. Lee* of counsel), for petitioner.

*Bruce H. Kaplan*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Bruce H. Kaplan was admitted to the practice of law in the State of New York by the Second Judicial Department on February 26, 1986 under the name Bruce Howard Kaplan. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

In January 2012, the Department Disciplinary Committee (DDC) charged respondent with six violations of the Rules of Professional Conduct (22 NYCRR 1200.0): (1) allowing a nonlawyer to use his IOLA account as a means of sheltering funds from tax and judgment creditors in violation of rule 8.4 (c); (2) allowing the aforementioned individual to use his IOLA account as a personal/business account in violation of rule 1.15 (b) (1); (3) making a false statement to the Committee in violation of rule 8.4 (c); (4) depositing personal and business funds into his IOLA account and transferring/disbursing said funds unrelated to the practice of law in violation of rule 1.15 (b) (1); (5) allowing his nonlawyer spouse to be a signatory on his IOLA account in violation of rule 1.15 (e); and (6) issuing IOLA checks made payable to "cash" in violation of rule 1.15 (e).

In his answer and subsequent stipulation, respondent admitted that he violated the fifth charge, allowing his nonlawyer spouse to be a signatory on his IOLA account in violation of rule 1.15 (e), but denied the remaining charges.

On April 25, 2012, a hearing on the charges convened before a Referee. The Committee did not call any witnesses but introduced documentary evidence. Respondent testified on his own behalf and introduced documentary evidence.

Respondent stated that from 2005 through 2010, he worked primarily as a real estate developer and as a result, the amount of time he spent practicing law was greatly diminished and his

IOLA account was essentially dormant during the period at issue.

In or about 2007, respondent opened an IOLA account with JP Morgan Chase. Both respondent and his then wife, Aliza J. Kaplan, a nonattorney, were named as the authorized signatories on the account. Respondent explained that his bank suggested that he list his then wife as an additional signatory because of complications that could arise due to respondent's status as a sole practitioner; however, his wife never transacted any business on the account. In addition, respondent admitted that since May 2008 until about 2011, he used his IOLA account as both a personal and business account. Furthermore, he admitted that between 2009 and 2010, he issued 13 IOLA checks made payable to "cash."

Respondent's misconduct also arose from his efforts to assist his friend, Tracy Cronin, a single mother who was in the midst of severe financial difficulties. In October 2007, HSBC commenced a foreclosure action against Cronin and named, inter alia, the New York State Department of Taxation and Finance, the New York State Workers' Compensation Board and the Internal Revenue Service as defendants because each had filed tax warrants/liens or judgments against Cronin. A schedule attached to the complaint listed the various tax warrants/liens and judgments entered against Cronin. In July 2008, respondent served Cronin's pro se answer on HSBC, which the bank rejected as untimely. By letter of September 3, 2008, respondent proposed settlement terms to HSBC's counsel, but the next day HSBC entered a judgment of foreclosure against Cronin. In October 2008, respondent permitted Cronin to use his IOLA account as a personal/business account. In or about January 2009, Nassau County Supreme Court issued an order, inter alia, staying the foreclosure sale of Cronin's home and directing HSBC to show cause as to why the judgment of foreclosure should not be vacated.

During the course of its investigation, the DDC requested by letter that respondent specify if, prior to permitting Cronin to use his IOLA account, he was aware of the tax liens and civil judgments entered against her. Respondent, by affirmation, stated that the only specific judgment he was aware of was the September 2008 foreclosure judgment entered by HSBC even though, as previously noted, the October 2007 foreclosure complaint listed the various tax liens and judgments entered against Cronin. Respondent testified that he never reviewed the

entire complaint and only became aware of the tax liens and judgments in January 2012 when he was served with the DDC's charges.

Following the liability hearing both parties submitted proposed findings of fact and conclusions of law. On September 28, 2012, the Referee informed the parties by letter that he had sustained all charges and directed that a sanction hearing be scheduled.

On October 18, 2012, a sanction hearing was convened at which respondent testified on his own behalf and called forth three character witnesses, former clients, who testified as to, inter alia, respondent's passionate advocacy, his dedication to his clients, and that he was a "do gooder." In his mitigation testimony, respondent expressed remorse for his misconduct. The parties submitted post-hearing briefs wherein the DDC argued for a one-year suspension and respondent urged a private reprimand or public censure. By a report dated January 28, 2013, the Referee recommended that respondent be publicly censured. The Referee stated, in pertinent part:

> "[respondent] has exercised poor judgment in abusing his IOLA account . . . Although he acted selflessly in his efforts to help Ms. Cronin, without any apparent benefit to himself, nonetheless, he has clearly abused his IOLA account and should have realized it at the time. . . .

> "In contrast to other respondents who have . . . demonstrated themselves to be greedy, dishonest, self-centered and indifferent to the needs of anyone but themselves, I find respondent in the instant matter to be the exact opposite. . . . [A suspension] should be reserved [for] attorneys who have been warned or previously admonished, who take the law to themselves to advantage themselves at the expense of others . . . On the other hand a private reprimand as the respondent suggests merely flies in the face of the notion that the IOLA account is pretty much sacrosanct. Clearly, respondent is an individual of caring and concern and to treat him otherwise would be wrong. It is my recommendation, based on the evidence and documents submitted that an appropriate sanction would be a public censure."

On March 1, 2013, a Hearing Panel adopted the Referee's liability findings and his recommendation of a public censure. The panel stated in pertinent part:

> "No one contends here that respondent commingled client funds with his own, or misappropriated client funds for his own personal or business uses. By opting to use an IOLA account as his chief banking account, ostensibly to save on bank fees at a time when his fiscal affairs were in peril, respondent made an error of judgment to which the Staff could rightly take notice, but those mistakes neither subverted nor seriously threatened the public policy interests that the rules on IOLA accounts are designed to protect. In every meaningful sense, this account did not operate as an IOLA account."

By petition dated May 17, 2013, the Committee seeks an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (2) confirming the Hearing Panel's findings of fact and conclusions of law and imposing whatever sanction the Court deems appropriate under the circumstances. Respondent requests that this Court confirm the Hearing Panel's findings of fact and conclusions of law and its recommendation of a public censure.

Since the Hearing Panel's liability findings are not contested and are fully supported by the record, those findings are confirmed and the six charges of misconduct against respondent, namely, violations of rules 1.15 (b) (1) and (e) and 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), are sustained.

Thus the only contested issue is the appropriate sanction to impose on respondent, and we find that a public censure is the appropriate sanction in this instance. Cases of escrow related misconduct similar to the matter at hand have resulted in sanctions ranging from public censure to suspension (*see Matter of Dyer*, 89 AD3d 182 [1st Dept 2011] [public censure for escrow related misconduct based on negligence that included commingling of client and personal business funds and cash withdrawals]; *Matter of Land*, 299 AD2d 83 [1st Dept 2002] [public censure for, inter alia, unintentional misappropriation of client funds and commingling of personal and client funds, and issuing check payable to "cash"]; *cf. Matter of Pritikin*, 105 AD3d 8 [1st Dept 2013] [two-year suspension for, inter alia, opening an IOLA account so that client could deposit personal

and business funds to avoid attachment of substantial tax liens and judgments]; *Matter of Goldstein*, 10 AD3d 174, 177 [1st Dept 2004] [two-year suspension for, inter-alia, "scheme of deception and evasion" by which respondent used two escrow accounts as a depository for personal funds to avoid attachment of tax liens]).

In this instance, respondent's misconduct was not the result of a well-orchestrated scheme to shelter substantial funds. Respondent's primary intent in allowing Ms. Cronin access and use of his escrow account was not to help Ms. Cronin evade her creditors. Rather, it was an attempt, albeit misguided, to help Ms. Cronin, who is a single mother suffering substantial financial problems. Common sense supports this conclusion, for if respondent's objective was to hide Ms. Cronin's assets, multiple alternatives were available to him to do so, including the use of any personal account in his own name or another to allow Ms. Cronin to transact her modest affairs. The fact that Ms. Cronin's financial situation was nearly judgment-proof likewise casts doubt on the venality of respondent's state of mind.

While respondent denied knowledge of the tax liens/warrants in the liability hearing, the staff and the Referee relied on circumstantial evidence to refute that denial; namely, that respondent must have known since he was an experienced practitioner in complex legal matters. The Referee made no finding that respondent had actual knowledge of the liens, but inferred that he must have known. The quality of the evidence speaks more to his competence than his intentional effort to conceal, and thus reduces the severity of the offense for sanction purposes.

However, the most important aspects to our conclusion are the undisputed facts that respondent did not maintain any client funds in his IOLA account, did not commingle his funds with those of any client, did not injure any client, and did not personally benefit *in any way* from assisting Ms. Cronin. We do not consider respondent a threat to the public, and we regard a suspension as unnecessary to protect its interests. A public censure of respondent is sufficient to send a message to the bar on the importance of IOLA conduct.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings and conclusions should be granted and respondent publicly censured.

MAZZARELLI, J.P., ACOSTA, SAXE, FREEDMAN and CLARK, JJ., concur.

Respondent publicly censured.