[970 NYS2d 516]

In the Matter of NEAL H. ROSENBERG (Admitted as NEAL HOW-
ARD ROSENBERG), an Attorney, Respondent. DEPARTMENTAL
DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPART-
MENT, Petitioner.

First Department, August 6, 2013

### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Michael S. Ross,* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Neal H. Rosenberg was admitted to the practice of law in the State of New York by the Second Judicial Department on October 22, 1975. At all times relevant to this proceeding, he maintained a principal place of business within the First Judicial Department.

On March 7, 2011, the Departmental Disciplinary Committee (Committee) served respondent with a notice and statement of charges containing six charges, four of which alleged professional misconduct stemming from respondent's misuse of his Attorney Trust Account (trust account).

Charges one and two of the Committee's statement of charges allege that respondent violated Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), which prohibits an attorney from misappropriating funds from a trust account or commingling them with the lawyer's own funds or the funds of another. Specifically, the Committee alleges that respondent misappropriated funds from his trust account by disbursing those funds to himself and others in excess of the amounts to which respondent and others were entitled. The Committee also alleges that respondent deposited personal funds into his trust account thereby commingling them with client funds.

Charge three alleges that respondent violated DR 9-102 (b) (1) (22 NYCRR 1200.46 [b] [1]), which prohibits an attorney from using his trust account as a business/personal account by making disbursements from his trust account for his own personal and/or business purposes.

Charge four alleges that respondent violated DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]), which require an attorney to keep records identifying the clients whose funds are deposited within his trust account and detailing all transactions related to such account, by failing to keep a ledger or similar contemporaneous record of all disbursements and deposits related to his trust account.

Charge five alleges that respondent violated DR 5-103 (b) (22 NYCRR 1200.22 [b]), which prohibits an attorney from advancing or guaranteeing financial assistance to a client during the course of pending litigation, by repeatedly advancing funds to his clients while representing them.

Charge six alleges that respondent violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), which prohibits an attorney from engaging in any other conduct that adversely reflects on his fitness as an attorney, by engaging in the misconduct listed in charges one through five.

On April 1, 2011, respondent submitted an answer to the statement of charges wherein he admitted each and every factual allegation therein. Thereafter, on May 6, 2011, the parties appeared for a hearing before a Referee. Respondent's testimony at the hearing, the testimony of three character witnesses, and several documents stipulated in evidence—including, a prehearing stipulation wherein respondent admitted liability with respect to all the charges in the Committee's statement of charges and eight letters describing respondent's character—established the following:

In 1981, approximately eight years after graduating from law school, respondent started his own firm, a solo practice focusing on education law. Specifically, respondent, whose firm now employs six attorneys and a 20-person support staff, has specialized in cases where the parents of children with special educational needs seek tuition and/or tuition reimbursement from government entities such as the New York City Department of Education. In June 2008, after the Lawyer's Fund for Client Protection informed the Committee that checks written from respondent's trust account, established in 2001, had been dishonored, the Committee commenced a sua sponte investigation.

The Committee's investigation included an audit of respondent's trust account for a 10-month period beginning on September 1, 2007 and ending on June 30, 2008. During the audit period respondent did not keep any records evincing deposits and/or disbursements from his trust account. In fact, respondent admitted that since he opened his law firm in 1981, his accounting system consisted of nothing more than daily calls to his bank to verify the balance in his trust account and individual sheets of paper documenting the amounts he received and disbursed to individual clients. The Committee further discovered that during the audit period, respondent routinely

disbursed funds from his trust account to both himself and his clients in amounts which exceeded that which he and those clients were authorized or entitled to receive. Respondent's use of his trust account in this manner caused multiple shortfalls in his account, the largest of which was $339,281.49 on April 10, 2008. In order to cover these shortfalls, the Committee learned that during the audit period, respondent would deposit his own personal funds into his trust account thereby commingling his personal funds with those within his trust account. Lastly, during the audit period, the Committee discovered that respondent would routinely use his trust account as a business/personal account, routinely making disbursements therefrom to cover his personal/business expenses. In addition to the foregoing, during the course of its investigation, the Committee learned that since 2001 respondent routinely advanced financial assistance to his clients by providing them with funds to pay their children's tuition. The funds used for these advances came from respondent's trust account, which funds represented legal fees already earned by respondent but which were improperly left within the account.

At the hearing, respondent reiterated the specialized nature of his practice, noting that obtaining the necessary funding from the government to address the special needs of the children whose parents he represents is both complex and frustrating, requiring his advocacy. Respondent testified that his firm handles approximately 1,200 cases per year, 10% to15 % of which are handled pro bono. Respondent attributed the violations of the disciplinary rules charged to ignorance. With regard to misuse of his trust account, respondent testified that he had never taken any courses on the proper use of trust accounts and was simply employing the accounting practices he had employed since he opened his firm in 1981. With respect to advancing financial assistance to his clients, respondent testified that he was unaware that such practice was proscribed by the disciplinary rules. On this issue respondent stated that he only advanced sums to clients when a decision awarding them tuition had already been issued and would not be appealed. Moreover, respondent testified that he never charged interest to his clients on these advances and only engaged in this practice when his clients would be unable to send their children to school absent his financial assistance. Respondent expressed a great deal of remorse at having violated the disciplinary rules and testified that after being apprised of the charges against him by the

Committee he retained ethics counsel and completely overhauled his firm's practices with regard to his trust account. Respondent further testified that he also hired an experienced bookkeeper to manage his trust account and keep the kinds of records required by the disciplinary rules. Since being apprised that advancing funds to clients is prohibited, respondent has not engaged in such behavior. Lastly, respondent noted that in his more than 30 years of practicing law, he had never been the subject of any professional discipline nor had his practices ever resulted in an inability to pay his clients all sums awarded to them

The Referee also heard from three character witnesses. A former Associate Justice of the Appellate Division, Second Department, and a Justice of the Supreme Court, both testified that they had retained respondent to represent them and their respective children. Both Justices stated that respondent is known to be trustworthy, honest and a tremendously fine attorney, possessing great skill, integrity, and character. Carrie Catapano, head of West End Day School, also testified about respondent's character, noting that respondent is routinely regarded as being the best attorney in his field of practice, that parents and colleagues look to him for educational and legal advice, and that she routinely recommends him to parents who need the kind of legal advice in which respondent specializes. The Referee also reviewed six letters from respondent's former clients, all of whom were thankful for the representation they received and would recommend respondent to other parents of special needs children.

To the extent that respondent admitted liability to all charges alleged by the Committee, the Referee found, consistent with the allegations in the Committee's statement of charges, that respondent through his misconduct violated all of the sections of the Code of Professional Responsibility charged by the Committee. However, while sustaining all charges, the Referee declined to recommend respondent's suspension, the sanction sought by the Committee, noting that suspension was unwarranted in light of all the extant mitigating factors established by respondent. Specifically, while the Referee noted, as urged by the Committee, that respondent's conduct was repeated, long-standing, and involved substantial sums of money, he nevertheless found that it was based on negligence rather than venal intent. Moreover, insofar as respondent's practice evinces his dedication to provide specialized legal services for the benefit of

children, which not may lawyers can provide, that he expressed substantial remorse for his misconduct, that he took corrective measures to ensure it does not recur, and that his misconduct resulted in no harm to any of his clients, the Referee recommended a public censure.

A Hearing Panel (Panel) heard arguments in support and in opposition to confirmation of the Referee's report and recommendation. For the very reasons articulated by the Referee, the Panel confirmed the Referee's report in its entirety.

The Committee now petitions this Court for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) and Judiciary Law § 90 (2), confirming the Panel's determination, thereby publicly censuring respondent. Respondent joins the Committee's petition, urging that it be granted in its entirety. We hereby grant the Committee's application and confirm the Panel's determination.

To the extent that respondent admitted all the factual allegations in the Committee's statement of charges in his answer and admitted liability to all charges in his prehearing stipulation, the Panel's determination on liability is fully supported by the record. We also find, given the record before us, that, here, public censure rather than suspension is the appropriate sanction.

The sanction for nonvenal violations of the disciplinary rules governing the use of trust accounts can range from public censure to suspension (*Matter of Dyer*, 89 AD3d 182, 185-186 [1st Dept 2011] [attorney publicly censured when he negligently, inter alia, withdrew cash from IOLA account in violation of DR 9-102 (e) and used his IOLA account as a business account]; *Matter of Francis*, 78 AD3d 106, 110 [1st Dept 2010] [attorney publicly censured when he, inter alia, used his IOLA account as a business account in violation of DR 9-102 (a)]; *Matter of Salo*, 77 AD3d 30, 39 [1st Dept 2010] [one-year suspension imposed for escrow related misconduct that included nonvenal misappropriation of third-party funds]; *Matter of Racer*, 56 AD3d 125, 127 [1st Dept 2008] [attorney suspended for four years for the "pervasive, reckless mishandling of an escrow account" that included nonvenal misappropriation and issuing checks payable to "cash"]; *Matter of Altomerianos*, 160 AD2d 96, 103 [1st Dept 1990] [attorney suspended for two years when through ignorance and inexperience he violated DR 9-102 (a) by commingling escrow funds with his own and DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) by failing to deposit client escrow funds in IOLA

account]). Whether suspension as opposed to public censure is warranted depends on the facts of each case, particularly whether the evidence presented demonstrates substantial evidence in mitigation of the misconduct alleged.

In *Matter of Dyer*, for example, we held that despite the attorney's misuse of his IOLA account, in that he used it as a personal/business account and caused a check issued from the account to be returned due for insufficient funds, the appropriate sanction was nevertheless public censure (89 AD3d at 184-186). In so holding, we noted that while the attorney in that case had indeed violated the disciplinary rules governing the use of IOLA accounts he had also presented substantial evidence in mitigation, namely that he had admitted to the charges and accepted full responsibility, had demonstrated remorse, had taken remedial measures to avoid further violations and had cooperated with the Committee (*id.* at 186). Conversely, in *Matter of Racer*, we held that an attorney's misuse of his IOLA account, in that he failed to keep proper records for the account and failed to preserve the identity of the funds within the account, warranted suspension (56 AD3d at 126-129). In holding that suspension rather than public censure was warranted, we noted that the attorney had presented "virtually no mitigating circumstances, respondent does not have an unblemished record and, although he did stipulate to some of the misconduct, he engaged in an extended delay in providing the Committee with information pertinent to his escrow account" (*id.* at 128).

Here, guided by our precedent in *Matter of Dyer*, we agree with the Panel and find that with regard to the charges alleging that respondent misused his trust account, respondent has presented substantial mitigating evidence warranting public censure rather than suspension. Specifically, the record evinces that respondent provides very specialized and scarce legal services for the benefit of children with special needs, that he engages in substantial pro bono work, that he has an unblemished disciplinary record, that he expressed substantial remorse for his misconduct, took corrective measures to ensure that the misconduct does not recur, and that his conduct did not harm any of his clients.

While respondent also admitted liability with respect to the charge alleging that he advanced financial assistance to his clients during the course of the litigation for which he was retained, public censure is nevertheless warranted. The record evinces that respondent's misconduct was precipitated by

ignorance and a desire to help his clients fund their children's education rather than a venal intent. Moreover, we find it mitigating that respondent did not profit from the loans he made to his clients.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings and conclusions should be granted and respondent publicly censured.

GONZALEZ, P.J., TOM, SWEENY, MANZANET-DANIELS and FEINMAN, JJ., concur.

Respondent publicly censured. The order and opinion per curiam of this Court entered May 14, 2013 (2013 NY Slip Op 03440), recalled and vacated.