Matter of Shen (2026 NY Slip Op 00618)

Matter of Shen

2026 NY Slip Op 00618

Decided on February 10, 2026

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 10, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Dianne T. Renwick
Presiding Justice
Sallie Manzanet-Daniels Troy K. Webber Cynthia S. Kern Peter H. Moulton
Justices.
 Motion No. 2025-06462 Case No.2024-07408
 In the Matter of Jianming Shen
an attorney
counselor-at-law: Attorney Grievance Committee for the First Judicial Department
Petitioner
Jianming Shen (OCA Atty. Reg. No. 4058301)
Respondent.

Motion No. 2025-06462|Case No. 2024-07480|

[*1]In the Matter of Jianming Shen, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Jianming Shen (OCA Atty. Reg. No. 4058301), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Jianming Shen, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on September 18, 2002.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Gillian C. Gamberdell, of counsel), for petitioner.
Respondent, pro se.

Per Curiam 

Respondent Jianming Shen was admitted to the practice of law in the State of New York by the Second Judicial Department on September 18, 2002, under the name Jianming Shen. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
In November 2024, the Attorney Grievance Committee (AGC) served respondent with a petition containing 11 charges alleging, inter alia, that respondent commingled personal and client funds and made false statements of fact to at least eight individuals, in violation of rules 1.4(a)(5), 1.5(d)(4), 1.15(a), 1.15(b)(1), 1.15(b)(2), 1.15(d)(1)(i), 1.15(d)(1)(ii), 1.15(d)(2), 4.1, and 8.4(c) of the Rules of Professional Conduct (RPC)(22 NYCRR 1200.0). The misconduct at issue centered, inter alia, on respondent's handling of nearly $3 million in client funds in connection with a real estate transaction, his use of personal and business accounts to hold those funds, and false statements made to his clients and to third parties.
By unpublished order dated March 24, 2025, the Court appointed a Referee to conduct a hearing on the charges and to issue a report containing findings of fact, conclusions of law, and a recommended disciplinary sanction, if any, as may be appropriate. Following a combined liability and sanction hearing, the Referee issued a report sustaining all charges except for charges five, ten, and eleven, and recommended that a public censure be imposed.
By motion dated December 1, 2025, pursuant to the Rules of the Appellate Division, First Department (22 NYCRR § 603.8-a[t]) and the Rules for Attorney Disciplinary Matters (22 NYCRR § 1240.8[b]), the AGC seeks an order confirming the Referee's report and sustaining charges one through four and six through nine, disaffirming the Referee's report and sustaining charges five, ten, and eleven; and imposing such sanction as the Court deems appropriate. Respondent seeks confirmation of the Referee's report and urges the imposition of a tempered sanction.
The charges at issue occurred in connection with respondent's representation of a Chinese couple in a residential real estate transaction. The transaction required the couple to transfer substantial funds from China to the United States. Respondent initially received these client funds into two of his personal accounts and thereafter transferred them into his business account at JPMorgan Chase. Respondent then decided to transfer the funds, totaling approximately $2.6 million, into a high-yield savings account. On July 26, 2023, in anticipation of a closing scheduled for July 28, respondent attempted to transfer the client funds from the high-yield savings account back to his Chase business account, but was unable to complete the transfers on time and the funds were not available in the Chase account on the scheduled closing date.
Thereafter, respondent attempted to postpone the closing by making misrepresentations to his clients and to the sellers' counsel. Specifically, respondent stated that he had mistakenly requested only one cashier's check from Chase rather than the three requested by the sellers, and that he therefore needed to cancel the initial check and have three new checks issued. Respondent's misrepresentations were discovered when the parties went to a Chase branch to determine whether the checks could be reissued. Respondent then confessed his actions and apologized to his clients.
The closing was successfully completed on August 1, 2023. Shortly thereafter, respondent self-reported his misconduct to the AGC, and sellers' counsel also reported respondent's misconduct. In his written submission, respondent took responsibility for his actions, a consistent theme throughout the instant disciplinary proceedings.
The AGC then served respondent with the instant petition containing eleven charges alleging violations of the RPC. Charge one alleged that, "[b]y commingling personal and client funds in his" bank accounts, respondent violated rule 1.15(a). In sustaining this charge, the Referee found that respondent admitted the underlying conduct, "seeking only to excuse the receipt of funds in his two personal accounts as an accommodation to a friend as opposed to being incident to the practice of law." The Referee further noted that none of respondent's accounts were maintained as an attorney escrow account.
The Referee also sustained charges two through four, which alleged violations of rules 1.15(b) and 1.15(d), on the bases that respondent held client funds in accounts that did not comply with the provisions of 22 NYCRR Part 1300 and failed to maintain the required bookkeeping records, including an escrow ledger.
The Referee did not sustain charge five, which alleged that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of rule 8.4(c) "[b]y falsely certifying that he had read and was in compliance with Rule 1.15 in his Office of Court Administration attorney registration." In declining to sustain the charge, the Referee reasoned that because respondent did not hold client funds until July 2023—more than a year after his most recent attorney registration affirmation in April 2022—respondent's affirmations appeared to be accurate when he made them.
The Referee sustained charge six, which alleged that respondent violated rule 1.4(a)(5) by failing to consult with his clients about his conduct when they expected him to receive transfers of their funds in his personal accounts. Although respondent denied knowing that accepting the deposits was improper, the Referee concluded that "accepting client deposits in personal accounts is an ethical violation whether or not the lawyer knows the rule."
The Referee sustained charges seven and eight, which alleged that respondent violated rule 4.1 by knowingly making false statements of fact relating to the status of the clients' funds at the closing. The Referee also sustained charge nine, which alleged that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of rule 8.4(c).
The Referee declined to sustain charge ten, which alleged that respondent violated rule 1.5(d)(4) by entering into at least five non-refundable fee agreements. Although the written agreements expressly stated that the legal fees were "nonrefundable regardless the result," the Referee concluded that the agreements at issue constituted permissible minimum or flat fees, reasoning that respondent's agreements functioned as reasonable minimum fees earned upon receipt rather than as retainers intended to restrict a client's right to discharge counsel.
The Referee also declined to sustain charge eleven, which alleged that respondent violated rule 8.4(h) by engaging in conduct that adversely reflected on his honesty, trustworthiness, or fitness as a lawyer on the ground that it was wholly derivative of the other charged misconduct.
In recommending a public censure as to these charges, the Referee found respondent to be a credible witness whose misrepresentations lasted no more than a couple of hours, caused no prejudice to anyone but himself, and constituted an isolated lapse in judgment occurring during a moment of stress. The Referee further noted that respondent accepted responsibility for his conduct.
The AGC now moves to confirm the Referee's findings sustaining charges one through four and six through nine, disaffirm the Referee's dismissal of charges five, ten, and eleven and impose such sanction as the court deems appropriate. Respondent opposes the AGC's motion to disaffirm the Referee's findings with respect to charges five, ten, and eleven, and requests that the Court confirm the Referee's dismissal of those charges. Respondent urges the court to impose a sanction less severe than suspension, arguing that removal from practice would adversely affect both his clients and the community he serves.
The Referee's findings sustaining charges one through four are fully supported by the record and should be confirmed. The evidence establishes that respondent knowingly commingled client funds with personal funds by receiving and holding nearly $3 million in client monies in personal checking, personal savings, business, and investment accounts, none of which were maintained as attorney special accounts in compliance with 22 NYCRR Part 1300. The record further establishes that respondent failed to maintain any of the bookkeeping records required by rule 1.15(d), including ledgers reflecting deposits, withdrawals, sources of funds and the identity of persons for whom funds were held.
Similarly, with respect to charges seven, eight and nine, the record establishes that respondent knowingly made false statements of fact to his clients and to third parties at the real estate closing concerning the status and availability of client funds. Respondent admitted that his explanation was untrue and that the delay resulted from his transfer of client funds into an investment account from which they were not timely accessible. These findings are supported by respondent's testimony and documentary evidence and warrant confirmation.
However, the Referee's dismissal of charge five should be disaffirmed. While the Referee dismissed the charge on the basis that respondent's certifications appeared accurate when made because he did not begin holding client funds until after his most recent registration affirmation, that analysis is inconsistent with the scope of rule 1.15.
Rule 1.15(d)(1)(i) requires attorneys to maintain specified bookkeeping records not only for escrow or special accounts, but also for "any other bank account that concerns or affects the lawyer's practice of law." The record establishes that respondent has maintained a business account for his law practice since approximately 2002 and that he never maintained the required records for that account, relying instead on bank statements alone. Thus, regardless of whether respondent held client funds before 2023, he was not in compliance with rule 1.15's bookkeeping requirements when he repeatedly certified that he was. Accordingly, charge five should be sustained.
The Referee's dismissal of charge ten should likewise be disaffirmed. Although the Referee concluded that respondent's non-refundable fee agreements could be construed as permissible minimum or flat fees, that conclusion is contrary to settled law. Rule 1.5(d)(4) codifies Matter of Cooperman, which holds that nonrefundable fee provisions are per se impermissible because they impair a client's absolute right to terminate the attorney-client relationship (83 NY2d 465, 469 [1994]). Accordingly, charge ten should be sustained.
The Referee's dismissal of charge eleven should also be disaffirmed. Although derivative in nature, this Court routinely sustains rule 8.4(h) charges where an attorney's misconduct, considered in toto, adversely reflects on fitness to practice law (see Matter of Liddle, 233 AD3d 127, 131 [1st Dept 2024]). Here, respondent's sustained misconduct includes the mishandling of substantial client funds, systemic bookkeeping failures extending over many years and knowing misrepresentations to clients and third parties. Taken together, this conduct reflects adversely on respondent's fitness as a lawyer beyond the technical elements of the individual rule violations. Accordingly, charge eleven should be sustained.
Finally, the Referee's finding sustaining charge six should be disaffirmed and that charge dismissed. As the Referee correctly noted, rule 1.4(a)(5) applies only where the attorney knows that the assistance sought by the client is prohibited by the RPC or other law. Here, the record does not establish by clear and convincing evidence that respondent knew at the time of the conduct that receiving client funds into his personal and business accounts was prohibited. Respondent consistently testified that he believed, albeit incorrectly, that such conduct was permissible, particularly given his limited experience in real estate transactions and his immigration-focused practice, and that he did not understand the escrow and special account requirements until the disciplinary process brought them to his attention. While ignorance of the rules does not excuse respondent's misconduct for purposes of charges one through four, rule 1.4(a)(5) requires actual knowledge. Because the AGC did not establish that respondent possessed such knowledge, the Referee's finding sustaining charge six should be disaffirmed and that charge dismissed.
As to sanction, this Court has consistently recognized that the appropriate discipline for nonvenal conversion and related escrow misconduct falls along a broad spectrum, ranging from public censure to multi-year suspension. Where the record establishes nonvenal conduct accompanied by poor bookkeeping, commingling, or negligent handling of client funds—but without intent to convert, client harm, or dishonest motive—public censure has repeatedly been deemed to be a sufficient sanction (see Matter of Guillorn, 114 AD3d 134 [1st Dept 2013][misappropriation attributable to sloppy or improper bookkeeping]; Matter of Rosenberg, 109 AD3d 225 [1st Dept 2013][commingling and misappropriation of escrow funds coupled with recordkeeping violations but substantial mitigation and no client harm]; Matter of Fisher, 43 AD3d 173 [1st Dept 2007][ improper escrow recordkeeping and nonvenal conversion]).
In contrast, suspensions of two to three years have been imposed where escrow misconduct was compounded by serious aggravating factors (see Matter of Shearer, 94 A.D3d 128 [1st Dept 2012][submission of false documents to the Office of Court Administration and false testimony]; Matter of Levy, 307 AD2d 47 [1st Dept 2003] [significant misappropriation of escrow funds resulting from prolonged recordkeeping failures]; Matter of Tepper, 286 AD2d 79 [1st Dept 2001][ bookkeeping irregularities leading to repeated invasions of client funds for personal or business use]).
Measured against this precedent, respondent's misconduct falls squarely within the category warranting public censure. Although this matter involves a significant amount of money and is in fact very serious, the record does not establish venal intent or support a finding of intentional conversion or client harm. The misconduct was isolated, occurred over a brief period, and was followed by respondent's near-immediate acknowledgment, remediation, and self-reporting. Respondent did not profit from the handling of client funds, and the transaction ultimately closed without loss to the clients. As this Court explained in Matter of Peskin, "[w]e have consistently held that public censure is an appropriate sanction for escrow violations such as commingling and nonvenal conversion where the misconduct is aberrational, and the attorney has shown remorse and cooperation" (173 AD3d 47, 50 [1st Dept 2019]). Applying that principle here and balancing the seriousness of the misconduct against the substantial mitigating factors present, public censure is a proportionate and appropriate sanction.
Accordingly, the AGC's motion should be granted to the extent of confirming the Referee's findings sustaining charges one through four and seven through nine and disaffirming the Referee's findings dismissing charges five, ten, and eleven. The AGC's motion should further be denied with respect to confirming the Referee's finding sustaining charge six, and charge six dismissed. With respect to sanction, respondent is hereby publicly censured.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department, pursuant to 22 NYCRR § 1240.8(b) and 22 NYCRR § 603.8-a(t), is granted to the extent of confirming the Referee's findings sustaining charges one through four and seven through nine and disaffirming the Referee's findings dismissing charges five, ten, and eleven, and denied with respect to confirming the Referee's finding sustaining charge six, charge six is dismissed, and respondent, Jianming Shen, is publicly censured.
Entered: February 10, 2026